**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| CHARLENE WAGNER, on behalf of herself and all others similarly situated, as individuals,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF WASHINGTON, a public university, and SERVICE EMPLOYEES INT'L UNION LOCAL 925, a labor organization,<br><br>Defendants. | Case No. 2:20-cv-00091<br><br>**CLASS ACTION COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, AND DAMAGES** |

## INTRODUCTION

1. This 42 U.S.C. § 1983 class action case concerns whether a government may, consistent with the First Amendment, deduct union payments from the wages of public employees who are not union members and who have not waived their First Amendment right to not fund union advocacy. *See Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2486 (2018). It also concerns whether a government may, consistent with the Fourteenth Amendment's due process clause, deduct union payments from the wages of employees based *exclusively* on the *ex parte* application of the union to whom the government remits the payments.

2. Plaintiff Charlene Wagner ("Wagner") and class members (collectively, the "Plaintiffs") are University of Washington ("the University") employees from whose wages the University deducted and continues to deduct union payments pursuant to RCW 41.56.110. The University continues to deduct payments despite the fact that (1) pursuant to 41.56.110(4) the University is seizing Plaintiffs' wages based *exclusively* on the *ex parte* application of Service Employees International Union, Local 925 ("SEIU 925"), the party to whom Plaintiffs' wages are remitted; (2) Plaintiffs are not SEIU 925 members; (3) Plaintiffs objected to the deductions; and (4) the agreement Defendants claim justifies the continued deductions fails to constitute a First Amendment waiver and allegedly renewed when Plaintiffs were nonmembers.

3. The University and SEIU 925 claim the deductions were and are proper pursuant to RCW 41.56.110, applicable collective bargaining agreements, and agreements which allegedly authorize and require the University to deduct union payments from Plaintiffs' wages, even though the agreements do not inform Plaintiffs of their First Amendment right to not fund union advocacy, Plaintiffs are union nonmembers, Plaintiffs objected to the deductions, and the agreements purported to renew when Plaintiffs were nonmembers.

4. As applied here, RCW 41.56.110 requires the University to deduct union payments from Plaintiffs' wages (1) without the consent required by the First Amendment, and (2) absent the procedural safeguards required by both the First Amendment and the Fourteenth Amendment's due process clause.

5. The University and SEIU 925 implemented RCW 41.56.110's procedure for the University's seizure of its employees' wages through Article 56 of the 2017-2019 and 2019-2021 collective bargaining agreements and other related CBA provisions ("CBAs") applicable to the parties. The statute and CBA provisions are unconstitutional on their face and as applied.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this case arises under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C § 1983. This Court has authority under 28 U.S.C. §§ 2201 and 2202 to grant declaratory relief and other relief, including preliminary and permanent injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Pocedure.

7. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over the state law claims stated in this Complaint as they are so related to the federal claims as to form part of the same case or controversy.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and intra-district assignment to the Seattle Division is proper, because the claims arise in this judicial district and division, and Defendants do business and operate in this judicial district and division.

## III. PARTIES

9. Plaintiff, Charlene Wagner, works for the University of Washington as a Fiscal Specialist and has done so since 1999. Plaintiff Wagner and the other class members are University of Washington employees whose exclusive representative is SEIU 925, and who are subjected to both the University's enforcement of RCW 41.56.110 and the CBAs.

10. Defendant University of Washington is a public four-year institution of higher education in Washington State, and has campuses in Tacoma, Bothell, and Seattle.

11. Defendant SEIU 925 is the state-recognized exclusive representative of Plaintiffs, and is headquartered at 1914 North 34th Street #100, Seattle, WA 98103. SEIU 925 represents approximately 17,000 people in Washington State, including employees at the University of Washington, various local governments, nonprofit organizations, and family child care providers.

## IV. STATEMENT OF FACTS

12. Plaintiffs are University employees exclusively represented by SEIU 925 and subject to a single collective bargaining agreement applicable to University employees and bargaining units represented by SEIU 925.

13. The University deducts union payments from Plaintiffs' wages pursuant to RCW 41.56.110, which was incorporated by the University and SEIU 925 into Article 56 of the CBAs.

14. RCW 41.56.110(4) requires the University to rely exclusively on information provided by SEIU 925 regarding which employees have and have not properly authorized the deduction of union payments from their wages, and it is at the *exclusive* and *ex parte* request of SEIU 925 that the University seizes union payments from Plaintiffs' wages.

15. Plaintiff Charlene Wagner ("Wagner") is employed by the University as a Fiscal Specialist and began her employment with the University in 1999.

16. Wagner became an SEIU 925 member in 1999, signing a union dues deduction authorization and membership agreement ("1999 Agreement") because she believed she needed to do so as a condition of her employment.

17. Under the terms of the 1999 Agreement, Wagner could revoke her membership and cease paying full union dues at any time.

18. At the time Wagner became a SEIU 925 member in 1999, the penalty for declining or resigning union membership was either compulsory union fees imposed by statute and a deprivation of the ability to vote on her own employment contract, or termination of employment.

19. On June 27, 2018, the U.S. Supreme Court in *Janus v. AFSCME, Council 31*, held that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the

1  employee affirmatively consents to pay." 138 S. Ct. at 2486. The Supreme Court also held that

2  agreeing to make any payments to a union constitutes a waiver of a constitutional right and that

3  "such a waiver cannot be presumed" and "must be freely given and shown by clear and convincing

4  evidence." *Id*.

5      20.    Shortly before the U.S. Supreme Court issued the *Janus* decision, however, the

6  University and SEIU 925 distributed and solicited employee signatures on *new* union dues

7  deduction authorization and membership agreements (the "New Agreements"), including current

8  members such as Wagner.

9      21.    These New Agreements offered employees no new rights or benefits, but included

10  a new provision which allowed employees to revoke their authorization for union dues deductions

11  **only** during a **narrow window period** "not less than thirty (30) days and not more than forty-five

12  (45) days before the annual anniversary date of this agreement or the date of termination of the

13  applicable contract between the employer and SEIU Local 925, whichever occurs sooner" (the

14  "Irrevocability Provision").

15      22.    This Irrevocability Provision automatically renews "from year-to-year unless I [the

16  employee] revoke it in writing during the window period as stated above."

17      23.    Employees who did not sign the New Agreement continued to be union members

18  under previous agreements.

19      24.    The New Agreement does not limit when employees can resign their union

20  membership; nor does the New Agreement place conditions on how to resign union membership.

21      25.    Neither the 1999 Agreement nor the New Agreement notifies employees of their

22  First Amendment right to pay nothing to a union.

23      26.    Wagner signed one of the New Agreements on June 13, 2018, having been told by

24

a union representative that its purpose was only to bring uniformity to union membership cards.

27. Wagner learned of her *Janus* rights for the first time in October 2018, through a third party's rights education program.

28. On October 18, 2018, Wagner unequivocally **resigned her membership** in SEIU 925 and **objected to union payments** in writing.

29. In response, Cindy Elizalde, Secretary-Treasurer of SEIU 925, sent a letter to Wagner dated November 8, 2018, informing her that, while her union membership can be canceled "at any time," SEIU 925 would instruct the University to continue deducting union payments from her wages pursuant to the Irrevocability Provision in the New Agreement Wagner signed on June 13, 2018, unless Wagner submitted a **second** deduction cancellation "request" during the narrow window period of April 29, 2019 through May 14, 2019.

30. By way of this letter, Ms. Elizalde also informed Wagner that SEIU 925 was now, for the first time, attempting to unilaterally place conditions on her membership resignation; specifically, SEIU 925 refused to process Wagner's membership resignation unless she sent a second signed letter resigning membership to a specific address. SEIU 925 additionally stated that the letter was required to include language stating Wagner acquiesced to the wage seizures the University would continue to deduct and remit to SEIU 925 despite her membership resignation and objection to the seizures.

31. Wagner declined to acquiesce to SEIU 925's demand and did not object in writing to union payments a second time during the narrow window of April 29, 2019 through May 14, 2019.

32. Pursuant to RCW 41.56.110 and at the exclusive direction of SEIU 925's ongoing *ex parte* application, the University continued to deduct union payments from Wagner's wages

1  when she was no longer a union member subsequent to her proper resignation of union
2  membership and objection to union payments, and continued the deductions subsequent to June
3  13, 2019, when the New Agreement purported to renew at a time when Wagner was a
4  nonmember. The University's deductions were ongoing at the time this lawsuit was filed.

5  33.  Defendants are state actors under color of state law — specifically RCW 41.56.110
6  and Art. 56 of the aforementioned CBAs.

## V. CLASS ALLEGATIONS

34.  Plaintiff brings this case as a class action pursuant to Federal Rules of Civil Procedure 23(b)(1)(A) and (b)(2), and, alternatively, 23(b)(3), for herself and for all others similarly situated, and any subclasses deemed appropriate by this Court. The class consists of all individuals: (1) who are University of Washington employees exclusively represented by SEIU 925 and subject to the CBAs described herein; (2) who have resigned union membership and objected to the payment of any union dues or fees; (3) from whom the University continues to deduct union payments on behalf of SEIU 925 pursuant to RCW 41.56.110; (4) who have signed the dues deduction and membership agreement or agreements described herein, or substantially similar agreements; and (5) have not otherwise waived the constitutional right to not fund union political advocacy. The class includes everyone who comes within the class definition at any time from (3) three years prior to the commencement of this action until the conclusion of this action.

35.  Upon information and belief, there are hundreds, perhaps thousands, of class members. Their number is so numerous and in varying locations and jurisdictions across Washington that joinder of all class members is impractical.

36.  There are questions of law and fact common to all class members, including

1  Plaintiff. Factually, the University has continued to deduct union payments pursuant to RCW
2  41.56.110 from all class members who have objected to union membership and the payment of
3  any union dues or fees, are no longer union members, and who have signed the dues deduction
4  and membership agreements described herein (or agreements substantially similar). The
5  University continues to deduct union payments from Plaintiff's and class members' wages based
6  exclusively on the ex parte day application of SEIU 925. The question of law is the same for all
7  class members: Do these deductions violate Plaintiff's and class members' First Amendment free
8  speech rights and Fourteenth Amendment due process rights?

9        37.    Plaintiff's claims and defenses are typical of other members of the class because,
10  pursuant to RCW 41.56.110, the University is seizing union payments from class members who
11  have resigned union membership and objected to union payments. Additionally, these union
12  nonmembers have have not clearly and affirmatively consented to the deductions by waiving the
13  constitutional right to not fund union advocacy, as articulated in *Janus*. The University collects
14  union payments from class members' wages pursuant to RCW 41.56.110 based exclusively on
15  information from SEIU 925. The University and SEIU have an identical duty to Plaintiff and all
16  other class members regarding these claims.

17        38.    Plaintiff can fairly and adequately represent the interests of the class and has no
18  conflict with other, similarly-situated class members. Plaintiff also has no interest antagonistic to
19  others similarly situated who have been subjected by the University and SEIU 925 to the
20  aforementioned schemes and union payment deductions.

21        39.    Defendants' duty to cease the aforementioned union payment deductions and pay
22  back all monies unlawfully deducted, applies equally to all in the respective class, and the
23  prosecution of separate, duplicative actions by individual class members would create a risk of

inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendants.

40. Defendants have acted to deprive Plaintiffs of their constitutional rights on grounds generally applicable to all class members, thereby making appropriate declaratory, injunctive, and other equitable relief with regard to the class as a whole.

41. The Plaintiffs are represented by the undersigned counsel *pro bono*. Counsel is employed by a long-established charitable organization experienced in furnishing representation to unionized public and partial-public employees whose constitutional rights have been violated.

42. A class action can be maintained under Rule 23(b)(3) because questions of law or fact common to the members of the class predominate over any questions affecting only individual members, in that the important and controlling questions of law and fact are common to all members of the class, *i.e.*, whether the aforementioned dues deductions violate their First Amendment free speech rights and Fourteenth Amendment due process rights, and whether certain dues deduction agreements constitute a valid waiver of the constitutional right articulated in *Janus* to not fund the union advocacy to any degree. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, in as much as the individual class members are deprived of the same rights by Defendants' actions, differing only in the amount of money deducted which is, for legal purposes, immaterial. This fact is known to the Defendants and easily calculated from Defendants' business records. The limited amount of money involved in the case of each individual's claim (union payment deductions since each class member objected to union membership and the payment of any union dues/fees; or, alternatively, union payment deductions since the agreements purported to renew when Plaintiffs were nonmembers; or, alternatively, union payment deductions since the New Agreements renewed

1 when class members were nonmembers; or, alternatively, union payment deductions since each class member began employment) would make it unduly burdensome for the class members to maintain separate actions.

43. A class action can be maintained under Rule 23(b)(1)(A) because separate actions by class members could risk inconsistent adjudications on the underlying legal issues.

44. A class action can be maintained under Rule 23(b)(1)(B) because an adjudication determining the constitutionality of the statute and CBAs described herein, as well as the union payment deductions and conduct described herein, as a practical matter, will be dispositive of the interests of all class members.

45. The illegal actions taken by Defendants were taken pursuant to the same statutes and collective bargaining agreements, and constitute a concerted scheme resulting in the violation of Plaintiff's and class members' rights. Additionally, the affiliation among the Defendants presents an organizational structure which makes it expedient for the named Plaintiff and members of the of the class to proceed against all named Defendants.

## VI. CLAIMS FOR RELIEF

### CLAIM 1
### First Amendment, through 42 U.S.C. § 1983
*Deducting union payments from Plaintiffs' wages pursuant to RCW 41.56.110 violates the First Amendment to the United States Constitution.*

46. Plaintiffs incorporate by reference and re-allege herein all Paragraphs above.

47. RCW 41.56.110, on its face and as applied, violates Plaintiffs' First Amendment rights, as secured against state infringement by the Fourteenth Amendment and 42 U.S.C. § 1983, to not associate with a mandatory representative, and to not support (financially or otherwise) petitioning and speech, and against compelled speech, because RCW 41.56.110 authorizes and compels the University to deduct union payments from Plaintiffs' wages even though they have

not clearly and affirmatively consented to the deductions by waiving their constitutional right to not fund union advocacy. Additionally, RCW 41.56.110 unconstitutionally authorizes and compels the University to deduct union payments from Plaintiff's and class members' wages without the necessary procedural safeguards.

48. Consent to fund union advocacy cannot be presumed, and Plaintiffs have not waived their constitutional right to not fund union advocacy.

49. No compelling state interest justifies this infringement on Plaintiffs' First Amendment rights.

50. RCW 41.56.110 is significantly broader than necessary to serve any possible alleged government interest.

51. RCW 41.56.110 is not carefully or narrowly tailored to minimize the infringement of free speech rights.

## CLAIM 2
### First Amendment, through 42 U.S.C. § 1983
*Deducting union payments from Plaintiffs' wages pursuant to the CBAs violates the First Amendment to the United States Constitution.*

52. Plaintiffs incorporate by reference and re-allege herein all Paragraphs above.

53. 2017-2019 and 2019-2021 CBA Art. 56 and other cited provisions of the CBAs and any action thereto, on their face and as applied, violate Plaintiffs' First Amendment rights as secured against state infringement by the Fourteenth Amendment and 42 U.S.C. § 1983, to not associate with a mandatory representative, and to not support (financially or otherwise), petitioning and speech, and against compelled speech, because the CBAs compel the University to deduct payments from Plaintiffs' wages and remit them to SEIU 925 even though Plaintiffs have not clearly and affirmatively consented to the deductions by waiving their constitutional right to not fund union advocacy; and because the CBAs authorize and compel the University to

deduct union payments from Plaintiffs' wages without the necessary procedural safeguards.

54. Consent to fund union advocacy cannot be presumed and none of the Plaintiffs have waived their constitutional right to not fund union advocacy.

55. No compelling state interest justifies this infringement on Plaintiffs' First Amendment rights.

56. The CBAs are significantly broader than necessary to serve any possible alleged government interest.

57. The CBAs are not carefully or narrowly tailored to minimize the infringement of free speech rights.

## CLAIM 3
### Fourteenth Amendment, through 42 U.S.C. § 1983
*RCW 41.56.110(4) violates Plaintiffs'*
*Fourteenth Amendment due process rights.*

58. Plaintiffs incorporate by reference and re-allege herein all Paragraphs above.

59. Defendants' wage exaction scheme pursuant to RCW 41.56.110(4) violates Plaintiffs' Fourteenth Amendment due process rights, on its face and as applied, because it results in the seizure of money from their wages without constitutionally required procedural safeguards. Specifically, the procedure is entirely controlled by SEIU 925, an interested party, and the University must seize money from Plaintiffs' wages and remit it to SEIU 925 on the *ex parte* application of SEIU 925.

60. None of the Plaintiffs have waived their Fourteenth Amendment due process rights.

61. No compelling state interest justifies this infringement on Plaintiffs' Fourteenth Amendment due process rights.

62. RCW 41.56.110(4) is not carefully or narrowly tailored to minimize the infringement of due process rights.

## CLAIM 4
### First Amendment, through 42 U.S.C. 1983
*Deducting union payments from Plaintiffs' violates Plaintiffs' freedom of association.*

63. Plaintiffs incorporate by reference and re-allege herein all Paragraphs above.

64. RCW 41.56.110, Article 56 of the 2017-2019 and 2019-2021 CBAs, other cited provisions of the CBAs, and Defendants' actions pursuant thereto violate Plaintiffs' First Amendment right to the freedom of association, as secured against state infringement by the Fourteenth Amendment and 42 U.S.C. § 1983, to the extent they force Plaintiffs to maintain union membership over their objection.

65. Consent to fund union advocacy cannot be presumed and Plaintiffs have not waived their constitutional right to not fund union advocacy.

66. No compelling state interest justifies this infringement on Plaintiffs' and class members' First Amendment right to freedom of association.

67. RCW 41.56.110, 2017-2019 and 2019-2021 CBA Art. 56 and other cited provisions of the CBAs are significantly broader than necessary to serve any possible alleged government interest.

68. RCW 41.56.110, 2017-2019 and 2019-2021 CBA Art. 56 and other cited provisions of the CBAs are not carefully or narrowly tailored to minimize the infringement of free speech rights.

## CLAIM 5
### Breach of Contract
*Defendants breached the 1999 Agreement (union dues deduction and membership agreement).*

69. Plaintiffs incorporate by reference and re-allege herein all Paragraphs above.

70. The dues deduction agreement between the parties executed in 1999 (the 1999 Agreement) did not limit when Plaintiffs could revoke authorization for the deductions.

71. Defendants breached the 1999 Agreements when they continued to seize union payments from Plaintiffs' wages after Plaintiffs revoked authorization for the union payments to be deducted from their wages.

72. The New Agreements, which contained the Irrevocability Provision, were not valid contracts because, among other reasons alleged in the facts above, they lacked consideration.

73. Alternatively, the Irrevocability Provision in the New Agreements only applies so long as Plaintiffs are proper members of SEIU 925.

74. Alternatively, the New Agreements, which contained the Irrevocability Provision, were not valid contracts because they fail to constitute First Amendment waivers.

75. Plaintiffs have been damaged by Defendants' breach in the form of unlawfully seized wages deducted by the University and remitted to SEIU 925, as well as unlawful forced association.

### CLAIM 6
### Breach of Contract
*Alternatively, Defendants breached the New Agreement (union dues deduction and membership agreement)*

76. Plaintiffs incorporate by reference and re-allege herein all Paragraphs above.

77. The dues deduction and membership agreement executed between the parties which contain the Irrevocability Provision ("New Agreement") did not limit when or how Plaintiffs could resign union membership.

78. Defendants breached the New Agreement to the extent Defendants refused Plaintiffs' resignation of union membership and placed conditions on such resignation.

79. Alternatively, the Irrevocability Provision in the New Agreements only applies so long as Plaintiffs are proper members of SEIU 925.

80. Plaintiffs have been damaged by Defendants' breach in the form of unlawfully

seized wages deducted by the University and remitted to SEIU 925, as well as unlawful forced association.

## CLAIM 7
## Unjust Enrichment
*Defendants' scheme unjustly enriched Defendant SEIU 925.*

81. Plaintiffs incorporate by reference and re-allege herein all Paragraphs above.

82. SEIU 925 knowingly received a benefit in the form a percentage of Plaintiffs' wages pursuant to the dues exaction scheme described above.

83. SEIU 925 benefited at Plaintiffs' expense because the University deducted a percentage of their wages and remitted the money to SEIU 925, and SEIU 925 knowingly benefited from, and was aware of, receiving Plaintiffs' money.

84. The circumstances of Defendants' scheme make it unjust for SEIU 925 to retain the benefit of Plaintiffs' seized wages.

## VI. PRAYER FOR RELIEF

85. Plaintiffs incorporate by reference and re-allege herein all Paragraphs above.

86. Plaintiff and class members have been injured as a result of Defendants' conduct as described above in deducting union payments, even though Plaintiffs have not clearly and affirmatively consented to the deductions by waiving the constitutional right to not fund union advocacy; because the procedure is entirely controlled by SEIU 925, an interested party, and the University must seize Plaintiffs' wages and remit them to SEIU 925 on the *ex parte* application of SEIU 925 without the necessary procedural safeguards; and because Defendants have breached the 1999 Agreement and New Agreement. Accordingly, Plaintiffs pray for the following relief:

87. **Declaratory Judgment**: enter a Declaratory Judgment that RCW 41.56.110, and Article 56 of the 2017-2019 and 2019-2021 CBAs and other cited provisions of the CBAs, and

Defendants' conduct pursuant thereto, on their face and as applied, violate free speech and freedom of association protected by the First Amendment, as well as the Fourteenth Amendment's due process clause and are unconstitutional and of no effect because they permit and compel the University to deduct union payments from Plaintiffs' wages even though they have not clearly and affirmatively consented to the deductions by waiving the constitutional right to not fund union advocacy, and/or and because the procedure is entirely controlled by SEIU 925, an interested party, and the University must seize Plaintiffs' wages and remit them to SEIU 925 on the *ex parte* application of SEIU 925 without the necessary procedural safeguards;

88. **Declaratory Judgment**: enter a Declaratory Judgment that Defendants breached the 1999 Agreement and/or New Agreement, thereby damaging Plaintiffs in the form of unlawfully seized wages deducted by the University and remitted to SEIU 925, as well as unlawful compelled speech and forced association;

89. **Declaratory Judgment**: enter a Declaratory Judgment that SEIU 925 was unjustly enriched by the seizure of Plaintiffs' wages deducted by the University and remitted to SEIU 925, and that Plaintiffs should be repaid such wages;

90. **Preliminary injunction and/or Temporary Restraining Order:** issue a preliminary injunction and/or temporary restraining order enjoining Defendants from engaging in any activity this Court declares is illegal or likely illegal. Plaintiffs are likely to prevail on the merits, will suffer irreparable harm in the absence of preliminary injunctive relief, the balance of equities tips in Plaintiffs' favor, and an injunction is in the public interest.

91. **Permanent injunction:** issue a permanent injunction enjoining Defendants from engaging in any activity this Court declares illegal, including but not limited to, the deduction of union payments from Plaintiffs' wages, and the continuation and enforcement of RCW 41.56.110

and Article 56 of the 2017-2019 and 2019-2021 CBAs and other cited provisions of the CBAs, insofar as doing so is unconstitutional and of no effect and/or unlawful.

92. **Compensatory Damages:** enter a judgment against Defendants awarding Plaintiffs compensatory damages in an amount equal to (1) all union payments deducted from Plaintiffs' wages going back to the extent of the relevant statute of limitations or the date each Plaintiff began employment, or (2) alternatively, all union payments deducted since the U. S. Supreme Court decided *Janus*, or (3) alternatively, all union payments deducted since Plaintiffs resigned union membership and objected to union payments, or (4) alternatively, all union payments deducted since Plaintiffs' New Agreements allegedly renewed when they were union nonmembers; as well as nominal damages, mental anguish damages, and restitution;

93. **Punitive Damages:** enter a judgment awarding Plaintiffs punitive damages against Defendants because their conduct, described above, was and is motivated by evil motive or intent, or involves reckless or callous indifference to the federal and state rights of Plaintiffs.

94. **Costs and attorneys' fees:** award Plaintiffs their costs and reasonable attorneys' fees pursuant to the Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C. § 1988; and

95. **Other relief:** grant Plaintiffs such other and additional relief as the Court may deem just and proper.

Dated: January 20, 2020

//////////

/////////

////////

1  n
   By: _____    By: _____
2                                            Robert A. Bouvatte, Jr.
   James G. Abernathy, WSBA #48801           c/o Freedom Foundation
3  c/o Freedom Foundation                    P.O. Box 552, Olympia, WA 98507
   P.O. Box 552                              PH: 360.956.3482 | F: 360.352.1874
4  Olympia, WA 98507                         RBouvatte@freedomfoundation.com
   p. 360.956.3482                           *Counsel for Plaintiff*
5  f. 360.352.1874
   jabernathy@freedomfoundation.com
6  *Counsel for Plaintiff*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24